UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lee Gill,

        Petitioner,

v.

Bruce Rieser, Warden,

        Respondent.

Civ. No. 12–03081 (DSD/JJG)

REPORT AND RECOMMENDATION

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Petitioner Lee Gill's Petition for Writ of Habeas Corpus (ECF No. 1). Petitioner asserts he is entitled to habeas relief because the state court violated *Brady v. Maryland*, 373 U.S. 83 (1963). He first claims the State violated *Brady* when the prosecution withheld the principal witness's previously undisclosed testimony. While Petitioner does not discuss them in his Petition, he also claims *Brady* was violated when the prosecution withheld certain photographs. Because he refers to the photographs tangentially in his memorandum, the court will address them here. As set forth below, the Court recommends the petition for habeas corpus be denied.[1]

I.     Background

On December 24, 1994, Petitioner appeared as a juvenile certified for adult prosecution in Hennepin County district court before the Honorable Charles Porter and pled guilty to the second degree murder of Norman Jackson, pursuant to Minn. Stat. § 609.19, subd. 1. *State v.*

---

[1] Petitioner has changed addresses since filing this petition. That he has moved to a different facility does not deprive the Court of jurisdiction in this case. *See Weeks v. Wyrick*, 638 F.2d 690, 693 (8th Cir. 1981) ("Once the custodian is properly served, subsequent transfer of the petitioner does not cause a loss of habeas corpus jurisdiction . . . .").

*Gill*, No. A11-133, 2011 WL 3903259, at *1 (Minn. Ct. App. Nov. 22, 2011). Petitioner was sentenced to 306 months in prison, but the court stayed execution of the sentence for 30 years subject to conditions of probation, including that Petitioner have no arrests and that he obey all national, state and local laws. *Id*. Although Petitioner was convicted and served sentences for felony-level domestic assault charges in 2001 and 2006, his original probation was not revoked. *Id.*

On July 19, 2008, Petitioner allegedly assaulted his girlfriend, P.M. The State accused Petitioner of violating the conditions of his probation. *Id.* Another incident was reported on July 31, 2008, in which allegations of kidnapping and motor vehicle theft were brought against Petitioner, but the state chose not to pursue probation revocation for that incident. *Id.* Instead, the violation petition related solely to the July 19th assault allegation.

At the September 2008 probation violation hearing to determine whether Petitioner's probation should be revoked, Petitioner and P.M. described differing accounts as to what happened on the night of July 19. *Id.* Petitioner testified that P.M. became distraught and accused him of cheating on her. Petitioner contended he tried to calm her down and prevent her from going outside to confront another woman. *Id.* He further testified that P.M. stabbed him in the eye following the argument, and that he used a pillow to cover his eye as he attempted to call 911. *Id.* Petitioner testified that he was free from fault, as P.M. was drunk, that he "never touched her," and that he only tried to prevent her from fighting the other woman. *Id.*

P.M.'s testimony at the probation violation hearing and her initial statement to the police contradicted Petitioner's testimony. In the initial statement to the police, P.M. testified that Petitioner "had placed a pillow over her face and that she believed he was going to kill her." *Id.* A police officer testified that there was no indication that P.M. had consumed alcohol. *Id.* P.M.'s

testimony at the probation violation hearing was consistent with her initial statement to the police. In addition to the allegations made in the initial account, P.M. alleged that Petitioner tried to prevent her from leaving the apartment by pinning her to a couch, and later pinned her down to the bed and warned her "not to get up." *Id.* She testified that she poked him in the eye with the pen in order to free herself; she also noted that Petitioner kept his fist closed, as if to punch her. *Id.*

Finding that Petitioner had violated the terms of his probation by clear and convincing evidence, the district court revoked probation. Petitioner appealed and the Minnesota Court of Appeals remanded to address the violation itself and whether the facts and law warranted Petitioner's confinement. *Id.* at *2. On first remand, the court held that the need for Petitioner's confinement outweighed all other factors, and again revoked Petitioner's probation. *Id.* Petitioner appealed again, challenging the finding that he violated a condition of probation. The court of appeals remanded a second time for additional clarification on which condition of probation Petitioner had violated. *Id.*

On the second remand, Petitioner raised the fact that P.M. had given a previously undisclosed statement to the police, and that he had only recently become aware of such statement. Apparently, the July 30, 2008 statement was a partial recantation of her allegations regarding the July 19 incident. *Id.* The new statement alleged that Petitioner did not attempt to strangle P.M., but rather that he only held her down on the couch. *Id.* The district court, in an additional hearing on whether to accept the new testimony, accepted it as additional evidence to take into consideration. *Id.* at *3. Bearing in mind P.M.'s recantation, the district court again revoked Petitioner's probation, finding that probable cause existed to suggest not only that

Petitioner failed to remain law abiding by assaulting P.M. on July 19,[2] but that enough evidence existed to arrest Petitioner for the July 31 allegations of kidnapping and car theft. *Id.*

Following the remand hearing, Petitioner moved *pro se* for a new hearing based on the state's initial "failure" to disclose P.M.'s recantation. *Id.* The district court denied the motion, holding that "Probable cause to arrest Defendant for July 19, 2008 incident with his then-girlfriend existed" at his arrest. *State v. Gill*, 2010 WL 8625840, at 4 (Minn. Dist. Ct. 2010). Petitioner appealed again. *State v. Gill*, No. 2011 WL 3903259, at *3. The issue of whether there had been a *Brady* violation arose for the first time before the court of appeals when Petitioner argued it as an alternative to the probable cause defense. Petitioner argued that the failure of the state to allow a cross-examination of P.M. amounted to a violation of the *Brady* principle. *Id* at *6. The court considered the *Brady* argument but held that the principle had not been applied improperly, stating:

> The district court ultimately considered all of the police reports from the July 19 incident, including the recantation statement and P.M.'s contemporaneous statement to police in which she expressed fear that appellant was going to harm her. The district court expressly noted the recantation statement but found, based on additional evidence, that appellant had violated the condition that he remain law abiding. Therefore, we conclude that the district court did not commit a due-process error by failing to provide appellant with an additional opportunity to address the recantation evidence and did not abuse its discretion by revoking appellant's probation.

*State v. Gill*, 2011 WL 3903259, at *6.

Petitioner also filed a *pro se* petition for relief based on the failure to disclose photos from the scene of the incident, which was denied as well. (Resp't Mem. at 1.) A discretionary

---

[2] The court also found that enough evidence existed to arrest Petitioner for the July 31 allegations of kidnapping and car theft, but those findings are not relevant here.

review of Petitioner's case was denied by the Minnesota Supreme Court on November 11, 2011. *Id.* at 3.

On December 11, 2012, Petitioner filed a petition for Writ of Habeas Corpus in federal court, claiming that the denial of discovery regarding P.M.'s partial recantation amounted to a violation of his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963). (Pet. at 2). Petitioner named as respondents Bruce Rieser, Warden of MCF-Faribault, and Lori Swanson, Minnesota State Attorney General. *Id.* at 1. Petitioner filed an initial memorandum to the court. Attorney General Swanson then filed a memorandum requesting her dismissal from the case, claiming she was an improper party, and Petitioner filed an amended memorandum to the Court which purported to omit Swanson from the petition.[3]

In his amended memorandum, Petitioner relies on two alleged *Brady* violations, arguing the prosecution "suppressed" evidence "materially favorable" to his position. (Pet'r Am. Mem. at 1.) Petitioner argues that the testimony given by P.M. "undermines the testimony [P.M.] had given at the initial revocation hearing and thus may have impacted the validity of the court's finding that Petitioner had failed to remain law abiding." (*Id.* at 4.) Petitioner further alleges that, had P.M.'s recantation been disclosed at the probation violation hearing, it would have "damaged" the state's burden to prove Petitioner assaulted P.M. (*Id.* at 9.)

To support his claim that P.M.'s recantation is beneficial to his testimony, Petitioner also asserts that photographs which accurately portrayed the circumstances of the incident were withheld by the state, another violation of *Brady*. (*Id.* at 2, 3.) Petitioner asserts that he and his counsel were informed by the prosecutor at an October 21, 2010, hearing that the investigating officer took no photos, and that she was not aware of any other photos that might have been

---

[3] The Court has recommended dismissal of Attorney General Swanson (E.C.F. No 21).

5

taken. They were further informed that "there simply are no pictures." (*Id.*). However, in early November, Petitioner obtained the photos from the Minneapolis Police Department. (*Id.* at 3.) He now alleges that his right to due process was violated when the photos were not disclosed at the probation revocation hearing. (*Id.* at 4.)

## III. Analysis

As stated by the United States Supreme Court in *Preiser v. Rodriguez*, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." 411 U.S. 475, 484 (1973). On review of a habeas petition brought pursuant to 28 U.S.C. § 2254, a court determines whether the incarceration of a state prisoner violates the United States Constitution or United States Supreme Court precedent. 28 U.S.C. § 2254(a).

A federal court's review of the state court decisions underlying a state prisoner's habeas petition is "limited and deferential." *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007) (quotation omitted). There are three circumstances in which a federal court may grant a state prisoner's habeas petition: (1) if the state court adjudication was contrary to clearly established federal law; (2) if the state court adjudication involved an unreasonable application of clearly established federal law; or (3) if the state court adjudication was based on an unreasonable evaluation of the facts. *See* 28 U.S.C. § 2254(d).

### A. The State Properly Applied *Brady* to the Improperly Withheld Recantation

Federal courts are unwilling to "upset" the holdings of a state court without allowing the state an opportunity to correct the constitutional error. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) (citing *Rose v. Lundy*, 455 U.S. 509, 518 (1982)). It is therefore the responsibility of the state to correct its mistakes before a habeas corpus petition may properly be brought before the

6

federal courts. *Collier* similarly requires deferential treatment of state court decisions. *Collier*, 485 F.3d, at 421. Because the state court properly identified *Brady v. Maryland* and applied it to the case, the only issue before the Court is whether the application was unreasonable. The Court finds it was not.

As the Minnesota Court of Appeals stated, there are three relevant factors in determining whether Petitioner's due process rights have been violated under *Brady*: (1) the relevant evidence must be favorable and exculpatory to the accused; (2) the state must have suppressed the evidence; and (3) prejudice to the accused must have resulted. *State v. Gill* 2011 WL 3903259, at *6 (citing *Pederson v. State*, 692 N.W.2d 452, 459 (Minn. 2005)).[4] The court found that, while the evidence was inadvertently suppressed by the prosecution, and though the evidence was favorable to Petitioner because "it tended to negate P.M.'s initial allegation of abuse," the district court did not violate the tenants of *Brady*. *Id.* The court noted that all evidence was ultimately taken into consideration at the district court level. Because the district court still found Petitioner to be in violation of his probation conditions, even after accepting the late disclosed evidence, there was no reasonable probability that the outcome of the proceedings would have changed had the withheld evidence been disclosed earlier. *Id.* Thus, no prejudice resulted. There is nothing in the record to suggest that the state court misapplied *Brady*.

Furthermore, in this Court's independent review of Petitioner's case, the state appropriately applied the *Brady* test. The Supreme Court elaborated on the *Brady* test and held that evidence is prejudicial "if disclosed and used effectively, [it] may make the difference

---

[4] *Pederson* notes that the principles in *Brady* were elaborated on by subsequent federal decisions, resulting in the three pronged test. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Brady v. Maryland,* 373 U.S. 83 (1963).

between conviction and acquittal." *United States v. Bagley,* 473 U.S. 667, 676 (1985) (citation omitted).

The Court finds that the third element of *Brady* is not met and, thus, Plaintiff's claim fails. Because the state court came to the same conclusion—that he violated the conditions of his probation—with and without the withheld evidence, P.M.'s recantation cannot be said to have made the requisite difference "between acquittal and conviction." *Bagley*, 473 U.S. at 676. Because the evidence was admitted and taken into consideration before the appeal, and because the state court reached the same conclusions as before, the court of appeals did not err when it concluded that there was no prejudice to Petitioner and thus, no *Brady* violation.

This Court is not willing to disturb the ruling of the state court. While a mistake was made, it was cured before prejudice resulted. Further, the state court applied clearly established federal laws and concluded that, given the totality of the circumstances, Petitioner's due process rights were not violated. Finally, the application of federal law was not unreasonable. For these reasons, the Court recommends the Petition be denied.

**B.     Petitioner's Claim Concerning the Photographs is Procedurally Defaulted**

Likewise, the claim related to the improperly withheld photographs should also be denied. First, Petitioner raised the improper withholding of the photographs only in his amended memorandum, not in his Petition, thus the claim is not actually a part of the Petition. More importantly, however, there is no evidence that he presented the issue to the state courts, thus he fails the "fair presentation" requirement. *Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010) (requiring a habeas petitioner to present his claims to the state court before seeking habeas relief). Likewise, Petitioner is barred from raising those claims in Minnesota's courts. *See State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976) (requiring criminal defendants to raise all

appellate issues in first appeal). Because Petitioner has failed to present the photograph-related claim to the state court, and because that claim is procedurally barred from being raised in future appeals, the claim is procedurally defaulted.

**IV.   Recommendation**

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner Lee Gill's Petition for Writ of Habeas Corpus (ECF No. 1) be **DENIED**;

2. This action be **DISMISSED WITH PREJUDICE**; and

3. **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: August 20, 2013          s/ *Jeanne J. Graham*
                                JEANNE J. GRAHAM
                                United States Magistrate Judge


**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **September 9, 2013.** A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.